S. L. BECKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9949.   Promulgated September 12, 1927.

1. Fair market value of accounts receivable at the time of the dissolution of a corporation determined.

2. Revenue agents' reports not shown to have been used by the Commissioner in the determination of the deficiency held to be irrelevant and immaterial to the issue.

*Frank Reagan, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

Individual income taxes for the year 1918 in the amount of $6,792.85 are in controversy.

The petitioner alleges that the Commissioner erred in determining (1) that certain assets received by the petitioner in 1918 upon the dissolution of the Union Furniture Co. produced a profit which is taxable to the petitioner, even though the petitioner had made a corporation return and paid a tax on the cash realized from these assets; (2) that the fair market value of the accounts receivable taken over by the petitioner from the Union Furniture Co. at the time of its dissolution in 1918, was equal to their face value; (3) that petitioner's opening inventory as of October 1, 1918, amounted to $14,374.54 instead of $6,619.75; (4) that the amount of merchandise purchased by the petitioner was only $6,683.81 instead of $14,638.62, as shown by his books, and (5) that all of the alleged surplus included in the corporation's net worth as of September 30, 1918, and taxed by the Commissioner against the petitioner as a liquidating dividend in the amount of $44,388.04 was earned subsequent to March 1, 1913, instead of determining that of this amount $23,636.51 was earned prior to March 1, 1913.

The Commissioner and the petitioner have agreed upon certain other items of the petitioner's income and with these we are not concerned in the present case.

#### FINDINGS OF FACT.

The petitioner is an individual residing in Macon, Ga.  Since 1902, he has been engaged in the retail furniture business, selling largely on the installment-credit plan.  On or about February 15, 1912, the petitioner, Louis Snyder and H. D. Kaplan, organized and incorporated the Union Furniture Co., with a capital stock of $5,000.  At that time they entered into an agreement which provided that the petitioner and Snyder should each own 8 shares of stock and that Kaplan should

own the remaining 34 shares. The petitioner and Snyder were to pay $800 cash for their stock at the time of the organization of the corporation. Thereafter each of them was to receive a salary of $75 per month, $40 of which was to be withdrawn and the remaining $35 was to be paid to H. D. Kaplan as payment on the purchase by each of additional stock at par and as payment of 7 per cent interest on the balance of the purchase price thereof until each should own 16 shares, leaving Kaplan with 18 shares.

In the course of time the petitioner acquired all of the corporation's capital stock. He paid for this stock as follows:

On or about January 25, 1912_____ $520. 00
By monthly payments of $35 on 16 shares_____ 1, 080. 00
In 1916 in payment for 8 of Snyder's 16 shares_____ 2, 900. 00
In July, 1918, in payment for the remaining 26 shares, all of which
    were owned by Kaplan_____ 10, 000. 00
                                                                  _____
        Total_____ 14, 500. 00

Throughout its entire existence the corporation kept its books and made its annual income and profits-tax returns by the cash receipts and disbursements method, which the respondent concedes was the correct method under the circumstances.

Petitioner has always made his individual income-tax returns by the cash receipts and disbursements method.

The corporation conducted a retail furniture business selling largely on the installment credit plan, up to and including the 30th day of September, 1918. On that day it surrendered its charter and a few days later was dissolved. From October 1 to December 31, 1918, the petitioner continued to conduct the business using the same store, the same books and the same name as the corporation had previously used.

On October 1, the petitioner took over the assets of the corporation. At that time he did not take an inventory or close the books of the corporation. Thereafter he kept no separate account of collections made on the corporation's accounts receivable, nor of the receipts from the sales of merchandise which he acquired from the corporation and thereafter sold. The last inventory that had been taken was taken at the beginning of the calendar year 1918.

Early in 1919, the petitioner consulted the Internal Revenue Agent in charge at Macon, Ga., and on the latter's advice the petitioner made a corporation income-and-profits-tax return on Form 1120 in the name of the Union Furniture Co. for the full 12-month period, covering the calendar year 1918. This return showed that tax was due in the amount of $239.90, and that $80 of this amount was paid at the time of filing the return. Attached to the return was an affidavit of the petitioner stating that the Union Furniture Co. was dis-

solved on October 2, 1918, but that the return was for the entire year 1918.

The petitioner did not file an individual income-tax return for 1918, believing that the corporation return was all that was necessary. The balance sheet as of December 30, 1918, which was used by the Commissioner in determining the net worth of the corporation at the date of dissolution, is as follows:

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash in bank | $1, 120. 33 | Notes payable (H. D. Kaplan) | $5, 266. 25 |
| Cash on hand | 435. 53 | | |
| Accounts receivable | 41, 847. 85 | Notes payable | 1, 145. 16 |
| Inventory | 14, 374. 54 | Accounts payable | 8, 170. 68 |
| Horses and wagons | 300. 00 | Reserve for depreciation | 213. 12 |
| Fixtures | 175. 00 | Net worth | 44, 388. 04 |
| Auto truck | 930. 00 | | |
| | 59, 183. 25 | | 59, 183. 25 |

In this balance sheet accounts receivable were included at their face value. From the net worth as thus determined the Commissioner deducted $14,500 as the cost of the stock and included the remainder in the petitioner's income for 1918 as a liquidating dividend.

### OPINION.

MURDOCK: The petitioner's first allegation of error was denied by the respondent, is not supported by the evidence and, if we understand it correctly, is without merit. The petitioner filed a corporation income-tax return for the full year and paid some tax on the basis of this return, whereas the corporation should have filed a corporation income-tax return for a portion of the year and the petitioner should have reported the income from this same business for the last three months of the year in his individual income return for that year. In such a situation he is not relieved from paying his tax computed on a proper basis merely because the corporation paid tax calculated on an improper basis.

Apparently his third allegation of error was abandoned. At any rate it is not supported by the evidence, for revenue agents' reports which have not been shown to have been used by the Commissioner in determining the deficiency are irrelevant and immaterial to this issue.

In support of the fourth allegation of error it was proven that after September 30, 1918, the petitioner's books showed that $14,638.62 had been paid for goods purchased. But the testimony of the petitioner himself in regard to these purchases was so confusing that we are unable to say whether the goods were purchased by the

corporation or by the petitioner as an individual. In addition we have never been shown what the Commissioner did in regard to these purchases and we are unable to say that what he did was in error.

The petitioner's fifth contention was denied and to support it a reconstructed balance sheet of the corporation as of March 1, 1913, was offered in evidence. This balance sheet was supposed to show the earnings of the corporation as of that date, but on cross-examination it was shown to contain material errors. Even had it been accurate we would need to know other facts before we could decide that earnings of years prior to March 1, 1913, were distributed in 1918.

On all of the above points we sustain the Commissioner.

There is left for our further consideration only the second allegation of error in regard to the fair market value of the accounts receivable at the time they were taken over by the petitioner as an individual. The petitioner called two witnesses and also testified himself to prove that these accounts receivable were worth only 45 per cent of their face value. Each of the three witnesses was allowed to testify without objection that in his opinion these particular accounts receivable had a fair market value of not more than 45 cents on the dollar. Each witness was familiar with the accounts receivable of the Union Furniture Co. on September 30, 1918. Each had had experience buying and selling other accounts of a similar nature. Their testimony was not weakened on cross-examination and was not contradicted or qualified in any way. Therefore, we hold that these accounts receivable should be taken at 45 per cent of their face value in determining the profit which the petitioner received from the corporation at the time of its dissolution.

> *Judgment will be entered in accordance with the foregoing opinion on notice of 15 days, under Rule 50.*

Considered by STERNHAGEN and ARUNDELL.